Your Honors, may it please the Court, Erin Radican appearing for Monica McCarrick, and I would like to reserve three minutes for rebuttal. So there are three main issues before the Court. There's the certified issue, which is the instructional error on CalCrim 627 regarding hallucinations, and then there's whether that issue is forfeited and whether this Court can consider the merits of that issue, and then the non-certified issue. So I'm going to focus first on the instructional issue. It's the main important issue. This jury, as the Court knows, was instructed that a hallucination is a perception not based on objective reality, as in when someone is seeing or hearing something that is not presently there and happening. The issue before the State Court was whether it could say that there was no reasonable likelihood that the jury construed that instruction to preclude Ms. McCarrick's beliefs. The jury was told to follow the instructions. The jury was told that the attorney's statements are not evidence. But in this case, the majority found that because the defense counsel argued that Ms. McCarrick's beliefs could be construed as hallucinations, that the jury followed counsel's suggestion. If you look at the beliefs that the defense submitted as relevant to premeditation and deliberation, these were not misperceptions. For instance, she had fears of Mr. Paulson, for example, and his mother. This was based on real concrete events she was not misperceiving. There was a movie synopsis at the house. It was written out by a friend, by Mr. Paulson, where everybody died. Mr. Paulson had a number of weapons. His ex-girlfriend had committed suicide. There were a number of factors that she was not misperceiving. These were real events that she was perceiving, but she made inferences from these events that were false or paranoid. It's certainly reasonably likely that this jury decided that these false beliefs were not misperceiving something presently happening. I submit the Court's majority decision is unreasonable, because this jury certainly could have followed the instruction and adopted the everyday normal meaning of hallucination and construed it as being, is she misperceiving what is immediately happening in front of her? She wasn't misperceiving events. She was making false or irrational inferences. Now you get to the question of whether or not California's contemporaneous objection rule applies. I think it was inconsistently applied here. I think that it's well settled under California law that if an objection would be futile because of the law, that it's waived, number one, that there's no error and not specifically objecting. Number two, it's well settled that where there's an instructional error affecting substantial rights, that the instructional error can be considered. And certainly in here, it's clear when you look at this, that the trial court was persuaded that PDEA, People v. PDEA was the existing law. People v. PDEA defined hallucination exactly as in this instruction. It was from the Oxford English Dictionary, and it was as whether when someone is misperceiving based on the five senses, this was the definition. Trial court made it very clear at the outset that it would permit evidence of hallucination only. It was felt bound by PDEA. That's clear. I take your point, but you never know whether an objection is going to be futile unless you make it. The issue, though, I understand that, Your Honor, but the issue here is whether the error should be excused. And I think this error should be excused and the merit should be reached, given that it's clear under California law that where the law is an external cause, it's preventing you from addressing your issue. Trial counsel and the trial court felt constrained by the existing state of the law, which limited the evidence on deliberation and premeditation to hallucinations only. So it's the rules inconsistently applied or the court here should find cause and prejudice or a fundamental miscarriage of justice. This removed her entire defense from jury consideration. We have a dissenting justice here who found that. This is certainly reasonably possible that this jury didn't consider her evidence. And there was evidence that on that day she was profoundly mentally ill and experiencing these false beliefs. She wasn't misperceiving what was happening, the interactions with the manager, for example, and trying to get the lock changed. She had a doom and gloom scenario. And this was inferences from real events that were happening to her at the time. This was not a rational inference. And it's reasonably likely that this jury didn't consider that and felt that it couldn't consider that. So this is a serious error affecting her defense, really her only defense here. So it's a serious error and this court should review it. The other issue I wanted to talk about is the uncertified issue. It seems to me that the district court may have maybe made a mistake because the court did certify whether or not the sanity finding was based on substantial evidence. But it was raised a little bit differently in the district court. So the jury here was instructed with regard to sanity that if the jury found that she had an adjustment disorder and there was no other mental illness, then the jury had to find that she was sane at the time of the offense. And the defense council actually objected to that language and the instruction that mentioned adjustment disorder. And the trial court stated, yeah, you're right. There's no evidence of adjustment disorder here because the only evidence was hearsay that was not admitted for its truth. But the court felt like it had to keep that in the instruction. So the jury was told that if it found she had the adjustment disorder, it could find that she was sane at the time of the crimes. And in this case, as you remember, there were three alienists who had impressive credentials. Sorry, your honors, fire trucks going by. There were three alienists who had very impressive credentials, all three of which that she was insane at the time of the events that she could not, she was unable to assess whether or not her actions were wrong morally or legally wrong. All three held it said that she was insane. Obviously, the jury would have to base their finding of sanity on either the evidence of methamphetamine use, or this these jail records that stated that some jail evaluators should cited she had an adjustment disorder. The evidence was clear that she wasn't impaired at the time she was she didn't have any drugs in her system. The only evidence before this jury was that that meant she hadn't used in two to two and a half days. So the jury didn't have any evidence from which to conclude that she was presently under the influence and the experts testified that it's possible if somebody is under the influence of methamphetamine that they could having these psychotic delusions, but they but so the evidence before the jury was that she was not under the influence of methamphetamine, that she had these psychotic delusions, whether or not she was impaired, that she clearly had a serious and long standing from the age of 12. mental health disorder. And I think it's reasonably likely on this record that the jury found she had an adjustment disorder. That's what the prosecution argued at length, but that was actually surplus language and there was no evidence of adjustment disorder. I seem to have some extra time. Does the court have any questions? No, I think we understand your argument. So we'll you can reserve the remainder for rebuttal. We'll hear from the state. Good morning. May it please the court Jill Thayer for the warden. I'm going to start with the three. There's really kind of three pillars to my argument about Cal crim number 627. And the first of course, is that it's procedurally barred or defaulted because defense counsel did not request that the instruction be the term delusion be added to the the futility. Well, first of all, when the state court imposes a bar, then that's a state law issue. So that is just not a question. That's what the state law imposed, the state court imposed, and that's what they agreed to. Then the question for this court is whether defendant Ms. McCarrick can establish cause. And the argument is that there's cause because futility, which I would say Engle v. Isaac says that no, futility does not. And Engle v. Isaac was also a instructional error issue. And it was actually a very substantial issue in that case, because in that case, the instruction was that the defendant had the burden of proof of self-defense. Okay, so that's a major constitutional issue. And the U.S. Supreme Court said, yes, indeed it is. But they also said that it was barred because the state court said that the defendant should have requested that the instruction be modified. And they did not, based on prior Ohio law. But even then, in Engle, the court said futility of presenting the objection doesn't constitute cause. So it says even if courts have disagreed, you can try again. And in this case, really, the majority had it right on it was not futile in any event. So even if you did say, okay, futility makes a difference. Courts have used hallucination and delusion interchangeably. They're kind of closely related concepts, mental illness concepts. Padilla itself, as the majority pointed out, was a delusion case. The defendant in Padilla thought that his cellmate had killed his family, family members, his brother and his father. He didn't say he, you know, saw something or heard something that wasn't there. He thought this guy, so it was an irrational belief. It was a delusional belief. And even some of the cases that Padilla talked about that listed hallucination, they also used the term delusion. And see, the problem that they were discussing in Padilla was whether you could use a delusion or hallucination. Well, hallucination is a term they used, I'll say that. But the question was whether it could be used to mitigate malice, to bring it down to manslaughter. But the problem with that is, is you have to have, it's an objective term, so objective versus subjective. In other words, a reasonable person standard. And of course, a reasonable person isn't going to be hallucinating or having delusions. That was the issue in Padilla. So, and every single judge in McCarrick, in this published opinion, agreed that delusions could be included on the issue of premeditation and deliberation, because that is a subjective standard. So, you can look at the defendant's real beliefs. You don't have to say, well, this was a reasonable person standard at all. It's not an objective reasonable person standard. You're looking at that actual defendant's beliefs. So, that's why if you think someone killed your family, then that can be considered on premeditation and deliberation, but not to mitigate it to volunteer manslaughter. So, that piece of it is the cause. And I think that's really the end of this. But in any event, the whole idea, and this is in the briefs, but certainly the jury was not instructed on this distinction between they just got that instruction that they had, and they were also instructed to consider all of the evidence, and then they also were given all of this evidence. Well, I also want to point out too, on the cause and futility, if the trial court thought that none of this evidence was relevant, it wouldn't have admitted it in the first place. So, clearly, they were under the So, you know, the thought that the trial court is going to admit all this evidence, but then say, no, because of this technical distinction between hallucination and delusion, I'm going to give an instruction that says you can't consider any of it, that just doesn't make any sense at all. The trial court wrestled with this and said, okay, I'll let you do it. I'll let you put it in on this issue of premeditation and deliberation. And certainly, it's just the jury heard all of this evidence, and the idea that the jury is going to make a fine distinction based on this instruction when they've been told to consider all the evidence, that we can't consider this defense evidence, that just doesn't make sense. And it certainly wasn't objectively unreasonable for the state court to hold that the jury didn't think it was precluded from considering all of the defense evidence. And then finally, and if you've read, I'm sure this court has, this discussion between the judges and the trial court, on the issue of prejudice, what gets really complicated is all of this evidence, or a lot of this evidence, had to do with things happening days and weeks before, which, of course, hurts Ms. McCarrick's premeditation and deliberation argument in the first place. Because this evidence shows that it had been a long, you know, kind of brewing, and that she was able to premeditate and deliberate, because it had occurred over days. So, then finally, when you get to prejudice, this evidence was not particularly helpful to her on showing her inability to premeditate and deliberate, because it occurred for days beforehand. And none of those beliefs precluded her from premeditating and deliberating. And then finally, the evidence of premeditation and deliberation was really overwhelming in this case, because, you know, well, I mean, the facts are horrible, but, you know, she used a sword, there were many, many, many stabbing wounds, she put the girls in the high chair, I don't want to have to go through all that, but it's, I mean, there's just overwhelming evidence of premeditation and deliberation in this case. So, unless the court has questions about CalCrim 627, and that issue, I can go on to the other issues. Okay, so then, this is going to be quick, but basically, I'm not really prepared to discuss the other issues, because one is uncertified and unbriefed. And then, well, actually, the sanity question is also, was not briefed in the opening brief. And so, I think that's forfeited. And so, if this court has any interest in claims two and three, I would request that we would be allowed to brief that. Well, sure. If we grant certification on that, we'll afford the state an opportunity to brief. With that, I'm ready to submit. Okay, we'll hear rebuttal. Your Honor, with regard to Ms. Thayer's argument about the Supreme Court decision talking about futility, it's clear that in that decision, they're talking about, because of a trial court's particular inclinations, the defense counsel decides that it would be futile. That wouldn't excuse the default. But in this case, it was because of the law. And granted, regardless of the discussion in Padilla about delusions and hallucinations, Padilla defined hallucinations as it's defined in 627. And this is the instruction that the jury got. The jury didn't have Padilla in front of it and didn't have the discussion of delusions. And the trial court had the Padilla decision which said, this is the definition of hallucination. This is the instruction that you can have as to what evidence is relevant. So, with regard to the argument that the court wouldn't have admitted this evidence unless it was relevant, and because so much of it was admitted, the jury certainly thought it was relevant. The court didn't assess all the evidence in detail and decide whether or not the jury would decide it was hallucinations. That was for the jury to decide. The court was clear that this was the instruction, I would allow evidence of hallucinations only. There was no detailed discussion about exactly what this evidence looked like and whether or not it qualified as you can just disregard all this evidence because there was no evidence of hallucination here. Very successfully argued that. With regard to the prejudice argument, there was a lot of overwhelming evidence that she was laboring under these false beliefs and delusions on the day of the crimes. I mean, her behavior was clearly bizarre with the manager and the car parking situation, her concern about the locks on the doors, her text, she was not very irrational statements in her text. She was laboring under these fears of this doom and gloom scenario on the day of the crimes. So, it certainly had this instructional error if the jury failed to consider this evidence, it certainly had a substantial injurious effect on the verdict. Thank you, counsel. Thank you both for your arguments today. The case just argued will be submitted and we'll proceed to the next case on the oral argument calendar, which is Peroton versus Hawaii Pacific Transport.
judges: WALLACE, THOMAS, McKEOWN